**Donald L. STACY et al., Plaintiffs,**

v.

**John D. WILLIAMS et al., Defendants.**

**Danny E. CUPIT et al., Plaintiffs,**

and

**Laurance R. Mitlin et al., Intervening Plaintiffs,**

v.

**M. M. ROBERTS et al., Defendants.**

**Nos. WC 6725–K, WC 6837–K.**

United States District Court,
N. D. Mississippi, W. D.

March 9, 1970.

See also D.C., 50 F.R.D. 52.

J. Wesley Watkins, III, Eugene M. Bogen, Greenville, Miss., for plaintiffs.

Thomas Ethridge, Oxford, Miss., James Rankin, Asst. Atty. Gen., Jackson, Miss., for defendants.

## MEMORANDUM OPINION ON MOTION FOR TEMPORARY RESTRAINING ORDER

KEADY, Chief Judge.

This case is a sequel to Stacy v. Williams, 306 F.Supp. 963 (1969), involving the first application of uniform rules and regulations relating to off-campus speakers on college and university campuses in Mississippi. Those rules were adopted on December 1, 1969. On March 6, 1970, Mississippi State University Chapter of the Young Democratic Clubs of Mississippi, intervening plaintiffs, filed their motion for temporary restraining order and other relief against defendant Board of Trustees of Institutions of Higher Learning for the State of Mississippi to enjoin the Board to allow Charles Evers to appear and speak on the campus of Mississippi State University in accordance with invitation extended to him pursuant to approval of the President of the University. Notice having been given defendants, an evidentiary hearing was conducted before a single judge of this court on March 9, 1970, with the following results:

### FINDINGS OF FACT

Mississippi State University Chapter of the Young Democratic Clubs of Mississippi (MSUYD) is an organization existing on the campus of Mississippi State University, which has been recognized as such by the President of the University.

On February 25, 1970, that organization acting through its president Al Roughton, submitted in writing a request for approval of an outside speaker in the person of Charles Evers to speak at 7:30 o'clock, p. m., on March 9, 1970, in Dorman Auditorium on campus, with an expected audience of 125 to 150 persons, on the subject: "The Future of the Loyal Democratic Party in Mississippi." The written request also indicated that Charles Evers presently is mayor of the City of Fayette, Mississippi.

Two days later, on February 27, 1970, Dr. William Giles, University President, acting through his authorized designee, approved this speaker request. The request was given consideration both by the president and by Drs. Martin and Jones, also administrative officers of the Mississippi State University. They considered the fact that on one occasion, the speaker at Alcorn A. & M. in 1966 had participated in certain disruptive actions and demonstrations on the campus of that college. They also considered the fact that since that time, Charles Evers had spoken on other college campuses such as Millsaps College, Mississippi College, University of Mississippi as well as Memphis State University, and that these talks have been unaccompanied by any disruptive or violent consequences on the part of either Evers or the students in attendance. They concluded on the basis of these considerations that the speaker did not present any physical threat to the orderly operation of Mississippi State University.

Dr. Giles' approval of the speech was rescinded on or about March 4, 1970, because of the Board's overtures made to him that the speaking would incur the disapproval of the Board of Trustees. In fact, Dr. Thrash, Executive Secretary of the College Board, had polled the trustees by telephone, and by vote of twelve to one, the trustees were in favor

of instructing Dr. Giles to rescind the invitation. Thus, Dr. Giles rescinded the approval of the invitation only on the basis of the Board's direction.

On March 4, 1970, the MSUYD requested of the University President that a review be had before the Campus Review Committee to consider and act upon the President's denial of the speaker request. The Campus Review Committee, consisting of three faculty members selected by the Chairman of the Board of Trustees of the State College Board and two students occupying the offices of president and secretary of the Student Body Association, met on March 5, in a session lasting from 3 o'clock, p. m. until 11:30 p. m. At the conclusion of its session, which was a closed meeting, the Campus Review Committee, having been made fully aware of its position by the Board of Trustees and of a letter from Dr. Thrash, voted, by a vote of four to one, to approve the invitation and reverse the President's decision in denying permission for the speech to be made.

On the day following the action of the Campus Review Committee, namely, on March 6, 1970, the State College Board again notified President Giles that it also overruled the decision by the Campus Review Committee, and ordered that the meeting could not be held.

Immediately upon approval by President Giles of the request, the MSUYD extended an invitation to Mayor Charles Evers and promptly notified Dr. Giles that the invitation had been accepted. Publicity and posters announcing the speech were displayed.

The Board of trustees, following the decision of the three-judge court rendered December 1, 1969, saw fit to adopt the court-promulgated regulations. On this hearing, it was the position of the Board of Trustees, however, that it retained inherent power to pass upon the suitability of the speaker in the event, in the Trustees' judgment, the college administrators and Campus Review Committee failed to give sufficient attention and proper weight to a particular speaker's past record for violence or disruptive conduct on other campuses subject to the jurisdiction of the State College Board.

Dr. Thrash testified that the Board intervened in this case because it felt that it was not "a good decision" which had been reached by campus authorities, and that the decision to allow Charles Evers to speak was "not in the best interest of Mississippi State University."

## CONCLUSIONS OF LAW

The court is confronted with the uncontradicted fact that the speaker regulations proposed by the three-judge court[1] have, by operation of law, become effective because the Board has not seen fit to repeal them as it had the power to do. On the contrary, the Board has expressly adopted such uniform rules and regulations.

In this very sensitive First Amendment area, it is the duty of this court to see whether these rules and regulations, which undertake to limit plaintiffs' right of free speech, have been complied with.

In the opinion of the three-judge court, and as the rules very clearly indicate, no speech can be suppressed unless it constitutes a clear and present danger to a serious substantive evil that university authorities have a right to guard against; and the prior opinion very clearly holds that university authorities do not have a discretion in this field of selecting those speakers whose views they approve and disapproving those speakers whose views they are not in sympathy with. In such matters, the university authorities may not exercise an editorial judgment over what is deemed good or bad for college students to hear. In short, the university author-

1. These rules, which appear as an appendix in Stacy v. Williams, 306 F.Supp. 963, 979 (D.C.1969), are also attached to the present opinion.

ities may not, consistent with the First Amendment to the Constitution of the United States, pick and choose in selecting who may or may not speak on college campuses, although it is recognized that there is an area in which free speech can become the practical equivalent of serious disruptive conduct and, therefore, subject to proscription. The three-judge court undertook to suggest to the Board of Trustees that there ought to be formulated an objective method by which there can be winnowed out, so to speak, speech constituting a clear and present danger from all other speech that must be constitutionally allowed. The speaker regulations, therefore, undertook to vest in the head of the particular institution involved, or such person as he might designate, the primary duty and power of making this very sensitive determination. It is in the interest of justice, workability and campus peace that the primary decision be vested in the head of the institution, who should be governed by discretion exercised only after proper inquiry made, and in accordance with objective standards of clear and present danger test that the court laid down in its regulations.

In this case, the paramount fact is that Dr. Giles made such an objective inquiry, and concluded on the basis of pertinent information available that there was no clear and present danger presented by Evers and no ground for constitutionally denying the request of the MSUYD for this speaker. Therefore, he granted the request, but was peremptorily overruled by higher authority. He was thus placed in a position of disobeying his superiors, which of course is untenable. The permission thus withdrawn was not upon a finding that the speaker constituted a clear and present danger to the campus.

The speaker rules further provide, however, that if the president of the institution, or his authorized designee, denies the speaker request, as occurred here under the circumstances just developed, the aggrieved organization may pursue the matter further by an appeal to the Campus Review Committee. The Campus Review Committee is designed to reflect the sentiment of both faculty and students to assure the orderly operation of democratic processes on the college campus. The students composing that committee were necessarily those in whom the campus community had confidence by having elected them to important offices as the president and secretary of the student body of the association, whoever they might be. The three faculty members, constituting the majority, were selected, as they were in this case, by the Chairman of the Board of Trustees, thus recognizing the right and authority of that Board to have its influence felt in this decision-making process.

In the case at bar, the Campus Review Committee met, as the court has found, and voted four to one that the speaker request of the MSUYD should be granted.

By the uniform rules of the three-judge court, it is expressly provided that the Campus Review Committee shall have the power to grant or deny the request, and its decision shall be final unless judicial review is sought as thereafter provided. The judicial review provided for would be upon application of the organization aggrieved from the denial of the Campus Review Committee to allow the speech. That has not occurred in this case. The application here for judicial relief is by a student organization which initially secured the permission of the president of the university, but when he entered a denial, it then secured a reversal of the president's decision by the Campus Review Committee.

Thus, the petitioning plaintiffs have acted strictly in accordance with the uniform rules governing off-campus speakers. Also the campus authorities have undertaken to act in accordance with the rules of this court. The argu-

ment is made to the court that unless final authority is retained by the Board in these matters, it, in its superior wisdom, may lose control of the situation, or the best interest of the students and this institution may be harmed because of inadequate consideration or wrong decision made by campus authorities.

We recognize that in circumstances where it might be shown that the campus authorities had acted contrary to clear evidence in the application of the speaker rules, the Board of Trustees would not be precluded from invoking the equity powers of this or any other court of competent jurisdiction to prevent such misapplication. But such circumstances have not been here presented. The Board has not sought judicial relief on the basis of a fundamental error in the determinations made by the president or the Campus Review Committee, but has merely acted unilaterally to cancel and reverse serious and meaningful determinations.

The Board assuredly does not have power to override what this court says are the constitutional requirements of free speech; and it may not do so on this or any other occasion. This court willingly protects the rights of litigants who come with equity on their side and with clean hands. These students are in that position, for they have obeyed and satisfied the applicable regulations. Since First Amendment rights are rights possessed by college students in this state, they must be respected and the Board may not act to curtail or reduce those rights.

Despite the personal reluctance of this court to interfere with the decisions of the Board, it must do so in this instance to support the Constitution and the rights granted by that charter to its citizens. Accordingly, a temporary restraining order shall forthwith issue against the Board, its executive officers and members, restraining them from interfering in any way with the campus talk of Charles Evers scheduled to take place on the campus of Mississippi State University.

■ However, the court declines to cite the Board of Trustees and its officers for contempt of court because of violation of the order of the three-judge district court rendered December 1, 1969. In the first place, relief of that nature would more properly be addressed, not to a single judge but to the three-judge court. The order of the three-judge district court expressly provided that all matters relating to its enforcement would be retained by that court. Additionally, after hearing the evidence today, it is my conclusion that, although the Board has infringed upon the speaker regulations, it nevertheless adopted the court-promulgated rules, which it was not required to do. In fact, the Board was advised it had the power to repeal these specific rules, but it chose not to. Instead, the Board proceeded upon the notion that because of rule-making power inherently vested in it by state statutes and the state constitution, it could retain the ultimate control over off-campus speakers. Such a view is a mistaken one for it only leads to the conclusion that the Board may contravene the First Amendment rights to free speech as interpreted and applied to college campuses by this court. However, the mistake of the Board does not amount to an obstinate and deliberate disregard as would fairly justify the three-judge court in considering that Board members should, at this time, be punished for contempt. The Board has expressly adopted these rules, and it now knows how such rules work and that they will be enforced by this court faithfully and without reservation. It is in the public interest that these rules be retained and impartially applied and respected by the Board, the college administrators, and the campus community. The prayer for contempt citation is dismissed.

## APPENDIX

UNIFORM REGULATIONS FOR OFF-CAMPUS SPEAKERS INVITED BY ORGANIZED STUDENT AND FACULTY GROUPS APPLICABLE TO ALL INSTITUTIONS OF HIGHER LEARNING WITHIN THE STATE OF MISSISSIPPI

The freedoms of speech and assembly guaranteed by the first and fourteenth amendments to the United States Constitution shall be enjoyed by the students and faculties of the several Institutions of Higher Learning of the State of Mississippi as respects the opportunity to hear off-campus, or outside, speakers on the various campuses. Free discussion of subjects of either controversial or noncontroversial nature shall not be curtailed.

However, as there is no absolute right to assemble or to make or hear a speech at any time or place regardless of the circumstances, content of speech, purpose of assembly, or probable consequences of such meeting or speech, the issuance of invitations to outside speakers shall be limited in the following particulars, but only in the manner set forth herein:

(1) A request to invite an outside speaker will be considered only when made by an organized student or faculty group, recognized by the head of the college or university;

(2) No invitation by such organized group shall issue to an outside speaker without prior written concurrence by the head of the institution, or such person or committee as may be designated by him (hereafter referred to as his authorized designee), for scheduling of speaker dates and assignment of campus facilities;

(3) Any speaker request shall be made in writing by an officer of the student or faculty organization desiring to sponsor the proposed speaker not later than ten calendar days prior to the date of the proposed speaking engagement. This request shall contain the name of the sponsoring organization, the proposed date, time and location of the meeting, the expected size of the audience and topic of speech. Any request not acted upon by the head of the institution, or his authorized designee, within four days after submission shall be deemed granted;

(4) A request made by a recognized organization may be denied only if the head of the institution, or his authorized designee, determines, after proper inquiry, that the proposed speech will constitute a clear and present danger to the institution's orderly operation by the speaker's advocacy[1] of such actions as:

1. The violent overthrow of the government of the United States, the State of Mississippi, or any political subdivision thereof; or

2. The willful damage or destruction, or seizure and subversion, of the institution's buildings or other property; or

3. The forcible disruption or impairment of, or interference with, the institution's regularly scheduled classes or other educational functions; or

4. The physical harm, coercion, intimidation, or other invasion of lawful rights, of the institution's officials, faculty members or students; or

5. Other campus disorder of a violent nature.

In determining the existence of a clear and present danger, the head of the institution, or his authorized designee, may consider all relevant factors, including whether such speaker has, within the past five years, incited violence re-

---

1. Advocacy, as described above, means preparing the group addressed for imminent action and steeling it to such action, as opposed to the abstract espousal of the moral propriety of a course of action by resort to force; and there must be not only advocacy to action but also a reasonable apprehension of imminent danger to the essential functions and purposes of the institution.

sulting in the destruction of property at any state educational institution or has willfully caused the forcible disruption of regularly scheduled classes or other educational functions at any such institution.

(5) Where the request for an outside speaker is denied, any sponsoring organization thereby aggrieved shall, upon written application to the head of the institution, or his authorized designee, obtain a hearing within two days following the filing of its appeal before a Campus Review Committee, composed of three faculty members and two students of the institution, for a de novo consideration of the request. The Campus Review Committee shall have power to grant or deny the request; and its decision shall be final, unless judicial review is sought as hereinafter provided. If such request is neither granted nor denied within said two-day period, it shall be deemed granted, and the speaker's invitation shall issue. The three faculty members to serve on the Campus Review Committee shall be appointed at each institution for a one-year term beginning September 1 of each calendar year, and this appointment shall be made by the President of the Board of Trustees of the Institutions of Higher Learning. The two student members on the Campus Review Committee shall be the president and secretary of the student body of each institution, and they shall serve only as long as they hold those student offices.

Any sponsoring organization aggrieved by the action of the Campus Review Committee in denying the request may obtain judicial review thereof upon application to any court of competent jurisdiction, state or federal, by presenting its verified petition setting forth the grounds of complaint and giving adequate notice of such filing to the head of the institution. Upon a hearing to be conducted as soon as practicable, and at such time and place as the court may prescribe, the court shall either reverse or affirm the decision of the Campus Review Committee as may be proper under the law and facts.

(6) Where the request for an outside speaker is granted and the speaker accepts the invitation, the sponsoring organization shall inform the head of the institution, or his authorized designee, in writing immediately of such acceptance. The head of the institution, or his authorized designee, may, in his discretion, require that the meeting be chaired by a member of the administration or faculty, and he may further require a statement to be made at the meeting that the views presented are not necessarily those of the institution or of the sponsoring group. By his acceptance of the invitation to speak, the speaker shall assume full responsibility for any violation of law committed by him while he is on campus.