

# THE ATTORNEY GENERAL
# OF TEXAS

## AUSTIN, TEXAS 78711

JOHN L. HILL
ATTORNEY GENERAL

January 30, 1975

The Honorable Jack K. Williams
President
Texas A&M University
College Station, Texas 77843

Opinion No. H- 511

Re: Whether use of physical
facilities of state university
by church affiliated student
organization would violate
the U.S. and Texas Constitu-
tions.

Dear Dr. Williams:

You have asked our opinion on the legality of the university's
recognition of various church affiliated student organizations and of
permitting them the same use of university facilities permitted other
recognized student organizations, including the rent-free use of meeting
rooms and auditoriums. We understand that religiously oriented organi-
zations would constitute only a small percentage of the total number of
student clubs recognized by the university.

The First Amendment to the United States Constitution which
applies to the states by virtue of the Fourteenth Amendment provides
in part that:

> Congress shall make no law respecting an
> establishment of religion, or prohibiting the
> free exercise thereof . . . .

In examining governmental enactments against the backdrop of
the constitutional language, the Supreme Court has developed a four
point test which must be considered. The questions which must be
considered are:

> First, does the Act reflect a secular legislative
> purpose? Second, is the primary effect of the Act
> to advance or inhibit religion? Third, does the
> administration of the Act foster an excessive govern-
> ment entanglement with religion? Fourth, does the
> implementation of the Act inhibit the free exercise
> of religion?

Tilton v. Richardson, 403 U.S. 672, 678 (1971). See also Hunt v. McNair, 413 U.S. 734 (1973); Committee for Public Education v. Nyquist, 413 U.S. 756 (1973); Attorney General Opinions H-203 (1974), H-66 (1973), Letter Advisory No. 47 (1973).

We are not prepared to conclude that the university's policy of recogniz- ing student clubs, including some religiously-oriented clubs, does not have a secular purpose of encouraging students to meet to discuss ideas and pursue goals of common interest and promote the secular purpose of establishing a pluralistic community. See Walz v. Tax Commission, 397 U.S. 664 (1970) (Brennan, concurring); Keyishian v. Board of Regents of New York, 385 U.S. 589 (1967).

Neither are we convinced that the university's policy of recogniz- ing student clubs, including some religiously-oriented clubs, would have the primary effect of advancing or hindering religion. The primary effect appears to be to encourage the interchange of ideas by all types of groups of which religious organizations constitute only a small portion. See Allen v. Morton, 495 F.2d 65 (D.C. Cir. 1973).

Nor can we say that the entanglement test is violated. We understand that recognition of an organization operates as an essentially non-discretionary act and that use of facilities by these groups is handled on a "reservation, first come, first served" basis. Greater entanglement problems might be presented if the school denied use of its facilities to religious groups and was required to ascertain a group's purposes and monitor its activities. Walz v. Tax Commission, 397 U.S. 664 (1970); see, Healy v. James, 408 U.S. 169 (1972).

There is an internal tension in the First Amendment between the establishment clause and the free exercise clause. Tilton v. Richardson, 403 U.S. 672 (1971). The Supreme Court has held denials of licenses for

use of public parks for religious services to be invalid as a denial of equal protection in the exercise of freedom of religion. Fowler v. Rhode Island, 345 U.S. 67 (1953); Kunz v. New York, 340 U.S. 290 (1951); Niemotko v. Maryland, 340 U.S. 268 (1951). Although it did not discuss the relation between the establishment and free exercise clauses, the Supreme Court did not question the use of public parks and streets for religious purposes and did rely on the denial of the right of free exercise of religion. If, as we understand, use of university facilities by student religious organizations is on the same basis as those facilities are used by other student clubs and there is no university policy or action to encourage attendance, we believe any problems concerning denial of the free exercise of religion can be avoided. See Stacy v. Williams, 306 F. Supp. 963 (N.D. Miss. 1969) (3-judge court).

Of course even protected activities are subject to reasonable regulations respecting the time, place and manner of their exercise. Cantwell v. Connecticut, 310 U.S. 296 (1940). The university can and should, however, condition the use of its facilities by student religious groups in the same manner as it does with non-religious groups. Healy v. James, 408 U.S. 169 (1972).

In addition to satisfying the requirements of the First Amendment to the United States Constitution, any program of recognizing student religious groups is subject to the limitations of article 1, section 7 of the Texas Constitution that:

> No money shall be appropriated, or drawn from the
> Treasury for the benefit of any sect, or religious
> society, theological or religious seminary; nor
> shall property belonging to the State be appropriated
> for any such purposes.

It has been held in a long and well researched opinion that a school building may be rented to a religious group during non-school hours. Attorney General Opinion O-5354 (1943). And see Pratt v. Arizona Board of Regents, 520 P.2d 514 (Ariz. 1974). We believe that, when use of a small portion of a building by a religious group is permitted as a part of

a larger student-club program which the university has determined is an important part of its overall educational function, such use could not be correctly termed the "appropriation" of property belonging to the State for religious purposes within the intent and contemplation of article 1, section 7 of the Texas Constitution.

Even though there is some expenditure of state funds for utilities and maintenance occasioned by the student group's use of a meeting room, we believe the amount is normally so small as to be insignificant. As the Florida Supreme Court said in relation to a similar situation under a similar constitutional provision:

> We think, however, that it is totally unnecessary to become involved in any prolonged discussion of the applicability of the separation of Church and State principle. In regard to the Florida Constitutional prohibition against contributing public funds in aid of any religious denomination, we find nothing in this record to support a conclusion that any public funds have been contributed. Taking note of appellant's insistence that the use of the building is something of value and that the wear and tear is an indirect contribution from the public treasury, it appears to us that we might here properly apply the maxim "De minimis non curat lex." Nothing of substantial consequence is shown and we see no reason to burden this opinion with a discussion of trivia.

Southside Estates Baptist Church v. Board of Trustees, 115 So. 2d 697, 699 (Fla. 1959).

Your question is narrow, and we have limited our answer solely to the question raised. We do not pass on any possible action or fact situation which might go beyond the scope of the question presented here.

## SUMMARY

Where a university provides meeting rooms

for student groups, including some religiously-oriented groups, as part of a broad-based student club program, it is not precluded from so permitting the use of meeting rooms and auditoriums on a non-discretionary, first come-first served basis where there is no university policy or action to encourage attendance.

Very truly yours,

JOHN L. HILL
Attorney General of Texas

APPROVED:

DAVID M. KENDALL, First Assistant

C. ROBERT HEATH, Chairman
Opinion Committee