SCHENCK *v.* UNITED STATES.

BAER *v.* UNITED STATES.

ERROR TO THE DISTRICT COURT OF THE UNITED STATES FOR THE EASTERN DISTRICT OF PENNSYLVANIA.

Nos. 437, 438. Argued January 9, 10, 1919.—Decided March 3, 1919.

Evidence *held* sufficient to connect the defendants with the mailing of printed circulars in pursuance of a conspiracy to obstruct the recruiting and enlistment service, contrary to the Espionage Act of June 15, 1917. P. 49.

Incriminating documents seized under a search warrant directed against a Socialist headquarters, *held* admissible in evidence, consistently with the Fourth and Fifth Amendments, in a criminal prosecution against the general secretary of a Socialist party, who had charge of the office. P. 50.

Words which, ordinarily and in many places, would be within the freedom of speech protected by the First Amendment, may become subject to prohibition when of such a nature and used in such circumstances as to create a clear and present danger that they will bring about the substantive evils which Congress has a right to prevent. The character of every act depends upon the circumstances in which it is done. P. 51.

A conspiracy to circulate among men called and accepted for military service under the Selective Service Act of May 18, 1917, a circular tending to influence them to obstruct the draft, with the intent to effect that result, and followed by the sending of such circulars is within the power of Congress to punish, and is punishable under the Espionage Act, § 4, although unsuccessful. P. 52.

The word "recruiting" as used in the Espionage Act, § 3, means the gaining of fresh supplies of men for the military forces, as well by draft as otherwise. P. 52.

The amendment of the Espionage Act by the Act of May 16, 1918, c. 75, 40 Stat. 553, did not affect the prosecution of offenses under the former. P. 53.

Affirmed.

THE case is stated in the opinion.

*Mr. Henry John Nelson* and *Mr. Henry J. Gibbons* for plaintiffs in error.

*Mr. John Lord O'Brian,* Special Assistant to the Attorney General, with whom *Mr. Alfred Bettman,* Special Assistant to the Attorney General, was on the brief, for the United States.

MR. JUSTICE HOLMES delivered the opinion of the court.

This is an indictment in three counts. The first charges a conspiracy to violate the Espionage Act of June 15, 1917, c. 30, § 3, 40 Stat. 217, 219, by causing and attempt-

ing to cause insubordination, &c., in the military and
naval forces of the United States, and to obstruct the
recruiting and enlistment service of the United States,
when the United States was at war with the German Em-
pire, to-wit, that the defendants wilfully conspired to
have printed and circulated to men who had been called
and accepted for military service under the Act of May 18,
1917, a document set forth and alleged to be calculated to
cause such insubordination and obstruction. The count
alleges overt acts in pursuance of the conspiracy, ending
in the distribution of the document set forth. The second
count alleges a conspiracy to commit an offence against
the United States, to-wit, to use the mails for the trans-
mission of matter declared to be non-mailable by Title XII,
§ 2 of the Act of June 15, 1917, to-wit, the above men-
tioned document, with an averment of the same overt
acts. The third count charges an unlawful use of the
mails for the transmission of the same matter and other-
wise as above. The defendants were found guilty on all
the counts. They set up the First Amendment to the
Constitution forbidding Congress to make any law abridg-
ing the freedom of speech, or of the press, and bringing
the case here on that ground have argued some other
points also of which we must dispose.

It is argued that the evidence, if admissible, was not
sufficient to prove that the defendant Schenck was con-
cerned in sending the documents. According to the
testimony Schenck said he was general secretary of the
Socialist party and had charge of the Socialist headquarters
from which the documents were sent. He identified a
book found there as the minutes of the Executive Com-
mittee of the party. The book showed a resolution of
August 13, 1917, that 15,000 leaflets should be printed
on the other side of one of them in use, to be mailed to
men who had passed exemption boards, and for distribu-
tion. Schenck personally attended to the printing. On

August 20 the general secretary's report said "Obtained new leaflets from printer and started work addressing envelopes" &c.; and there was a resolve that Comrade Schenck be allowed $125 for sending leaflets through the mail. He said that he had about fifteen or sixteen thousand printed. There were files of the circular in question in the inner office which he said were printed on the other side of the one sided circular and were there for distribution. Other copies were proved to have been sent through the mails to drafted men. Without going into confirmatory details that were proved, no reasonable man could doubt that the defendant Schenck was largely instrumental in sending the circulars about. As to the defendant Baer there was evidence that she was a member of the Executive Board and that the minutes of its transactions were hers. The argument as to the sufficiency of the evidence that the defendants conspired to send the documents only impairs the seriousness of the real defence.

It is objected that the documentary evidence was not admissible because obtained upon a search warrant, valid so far as appears. The contrary is established. *Adams* v. *New York*, 192 U. S. 585; *Weeks* v. *United States*, 232 U. S. 383, 395, 396. The search warrant did not issue against the defendant but against the Socialist headquarters at 1326 Arch Street and it would seem that the documents technically were not even in the defendants' possession. See *Johnson* v. *United States*, 228 U. S. 457. Notwithstanding some protest in argument the notion that evidence even directly proceeding from the defendant in a criminal proceeding is excluded in all cases by the Fifth Amendment is plainly unsound. *Holt* v. *United States*, 218 U. S. 245, 252, 253.

The document in question upon its first printed side recited the first section of the Thirteenth Amendment, said that the idea embodied in it was violated by the Conscription Act and that a conscript is little better than a

convict. In impassioned language it intimated that conscription was despotism in its worst form and a monstrous wrong against humanity in the interest of Wall Street's chosen few. It said "Do not submit to intimidation," but in form at least confined itself to peaceful measures such as a petition for the repeal of the act. The other and later printed side of the sheet was headed "Assert Your Rights." It stated reasons for alleging that any one violated the Constitution when he refused to recognize "your right to assert your opposition to the draft," and went on "If you do not assert and support your rights, you are helping to deny or disparage rights which it is the solemn duty of all citizens and residents of the United States to retain." It described the arguments on the other side as coming from cunning politicians and a mercenary capitalist press, and even silent consent to the conscription law as helping to support an infamous conspiracy. It denied the power to send our citizens away to foreign shores to shoot up the people of other lands, and added that words could not express the condemnation such cold-blooded ruthlessness deserves, &c., &c., winding up "You must do your share to maintain, support and uphold the rights of the people of this country." Of course the document would not have been sent unless it had been intended to have some effect, and we do not see what effect it could be expected to have upon persons subject to the draft except to influence them to obstruct the carrying of it out. The defendants do not deny that the jury might find against them on this point.

But it is said, suppose that that was the tendency of this circular, it is protected by the First Amendment to the Constitution. Two of the strongest expressions are said to be quoted respectively from well-known public men. It well may be that the prohibition of laws abridging the freedom of speech is not confined to previous restraints, although to prevent them may have been the

main purpose, as intimated in *Patterson* v. *Colorado*, 205
U. S. 454, 462. We admit that in many places and in
ordinary times the defendants in saying all that was said
in the circular would have been within their constitu-
tional rights. But the character of every act depends
upon the circumstances in which it is done. *Aikens* v.
*Wisconsin*, 195 U. S. 194, 205, 206. The most stringent
protection of free speech would not protect a man in
falsely shouting fire in a theatre and causing a panic.
It does not even protect a man from an injunction against
uttering words that may have all the effect of force.
*Gompers* v. *Bucks Stove & Range Co.*, 221 U. S. 418, 439.
The question in every case is whether the words used are
used in such circumstances and are of such a nature as to
create a clear and present danger that they will bring
about the substantive evils that Congress has a right to
prevent. It is a question of proximity and degree. When
a nation is at war many things that might be said in time
of peace are such a hindrance to its effort that their utter-
ance will not be endured so long as men fight and that no
Court could regard them as protected by any constitu-
tional right. It seems to be admitted that if an actual
obstruction of the recruiting service were proved, liability
for words that produced that effect might be enforced.
The statute of 1917 in § 4 punishes conspiracies to ob-
struct as well as actual obstruction. If the act, (speaking,
or circulating a paper,) its tendency and the intent with
which it is done are the same, we perceive no ground for
saying that success alone warrants making the act a
crime. *Goldman* v. *United States*, 245 U. S. 474, 477.
Indeed that case might be said to dispose of the present
contention if the precedent covers all *media concludendi*.
But as the right to free speech was not referred to spe-
cially, we have thought fit to add a few words.

It was not argued that a conspiracy to obstruct the
draft was not within the words of the Act of 1917. The

words are "obstruct the recruiting or enlistment service," and it might be suggested that they refer only to making it hard to get volunteers. Recruiting heretofore usually having been accomplished by getting volunteers the word is apt to call up that method only in our minds. But recruiting is gaining fresh supplies for the forces, as well by draft as otherwise. It is put as an alternative to enlistment or voluntary enrollment in this act. The fact that the Act of 1917 was enlarged by the amending Act of May 16, 1918, c. 75, 40 Stat. 553, of course, does not affect the present indictment and would not, even if the former act had been repealed. Rev. Stats., § 13.

*Judgments affirmed.*