### KAMMANN v. UNITED STATES.

(Circuit Court of Appeals, Seventh Circuit. May 8, 1919.)

No. 2665.

WAR ☞4—ESPIONAGE ACT—TRIAL—EVIDENCE.

On trial of a defendant charged with violation of Espionage Act, title 1, § 3 (Comp. St. 1918, § 10212c), by willfully making false statements with intent to interfere with the operation and success of the military forces of the United States, admission of evidence of expressions of defendant before the United States was at war, though showing a siding with Germany as against the Allies, *held* error.

In Error to the District Court of the United States for the Northern Division of the Southern District of Illinois.

Criminal prosecution by the United States against Charles H. Kammann. Judgment of conviction, and defendant brings error. Reversed.

R. H. Radley and John Dailey, both of Peoria, Ill., for plaintiff in error.

Edward C. Knotts, of Carlinville, Ill., and John Dougherty, of Peoria, Ill., for the United States.

Before BAKER and EVANS, Circuit Judges, and FITZHENRY, District Judge.

BAKER, Circuit Judge. Under an indictment containing 20 counts plaintiff in error was convicted of violating Act June 15, 1917, c. 30, tit. 1, § 3, 40 Stat. 219 (Comp. St. 1918, § 10212c). Ten counts set forth "false statements willfully made with intent to interfere with the operation and success of the military forces of the United States." The other 10 alleged that the same utterances were "willful attempts to cause insubordination, disloyalty, mutiny, and refusal of duty in the military forces."

Kammann was 56 years old at the time of the trial, born in Germany, and brought here at the age of two. His father was naturalized in 1871, thereby conferring citizenship upon the son. Graduate of the University of Illinois. For the 27 years preceding his indictment he was a teacher, and for several years one of the principals in the public schools of Peoria, Ill. For several years prior to the war he had been president of the Peoria chapter of the German-American Alliance, an organization specially chartered by Congress. Long before he was indicted the Peoria chapter was closed and the funds in the treasury were divided between the Red Cross and the Liberty Loan.

As a teacher of history to boys and girls from 12 to 15 years of age, in the classroom, and frequently in response to questions concerning current events, he made the statements between January and December, 1917, on which the indictment is predicated.

We have compared each alleged false statement with the evidence, and fail to find any ground on which the conviction can be sustained. As illustrative of the whole record, we set forth some of the strongest charges.

"It is all nonsense to talk about 'getting the Kaiser.' We might just as well talk about getting the President." Several pupils testified that substantially such a statement was made in class. Some of them did not remember the occasion or the context. Others did, and disclosed that the occasion was an inquiry by one of the boys about the slogan "Get the Kaiser," and the context was: "Getting the Kaiser would not end the war. This is a war of nations, and does not depend on getting anybody, whether the Kaiser, the President, or the Czar."

If false at all, it was a false opinion, not a false statement or report of fact. No evidence that it was false as a matter of opinion. No evidence that the pupils ever communicated, or that Kammann instructed or desired them to communicate, the statement to any of the military or naval forces of the United States. If such a statement might be deemed to have a tendency to discourage those little lads from enlisting or responding to call when they should reach military age, it is enough to note that the indictment contains no charge of "willful obstruction of the recruiting or enlistment service, to the injury of the service." This statement and likewise the others are isolated from context and occasion in the indictment; in

the proofs the background of these classroom utterances is illuminated by testimony of the pupils that Kammann in the same talks said to them:

"You children should be patriotic." "We are the strongest and best nation on earth." "It is the duty of all persons, no matter where they come from, to be loyal to this country," etc.

Testing the record by the rule that "the question in every case is whether the words used are used in such circumstances and are of such a nature as to create a clear and present danger that they will bring about the substantive evils that Congress has a right to prevent" (Schenck v. United States [March 3, 1919] 249 U. S. 47, 39 Sup. Ct. 247, 63 L. Ed. 470), we hold that no evidence was presented to the jury on which a finding could lawfully be based that Kammann willfully made false statements with intent to interfere with the operation or success of the military or naval forces or willfully attempted to cause insubordination or disloyalty among such forces.

"If we had stayed off the sea, we would not have gotten into the war."

"The Kaiser could not start the war without a vote of the Reichstag."

"We should not have sent munitions to the Allies. If we had not done so, we could have kept out of the war. Our sending munitions over there got Germany mad, and for that reason she went on sinking our ships, and this brought us into the war."

"General Lee said he could defeat the federal army in the Civil War if the Germans were out of it."

"If the Germans in this county had known that this country was to declare war against Germany, the Germans would have done differently in the Civil War."

"If Germany had not helped us in the Revolutionary War, we should have been defeated."

"The Allies cannot defeat Germany unless they starve the Germans out."

"The Kaiser was not to blame for the war."

"The Kaiser has not as much power as the President."

If any of these statements is more than an expression of opinion, the circumstances of their use did not create a clear and present danger of mutiny in our army or of other interference with our military operations.

These statements were made in class between January and December, 1917. In many instances the testimony of the pupils left the matter undeterminable whether the utterances were made before or after this country came into the war. In addition to this evidence of statements made while we were neutral, evidence was admitted of somewhat similar expressions in 1915 and 1916.

It is unnecessary in this case to measure the limits of the admissibility of evidence of prior acts or utterances similar to the acts or utterances charged in the indictment, as discussed in 1 Wigmore, §§ 300–306, 3 Greenleaf (15th Ed.) § 15, 1 Jones, § 144, 16 Corpus Juris, 586, and 7 Ency. of Evidence, pp. 629, 633; for the gist of the indictable offense here was the criminal intent to interfere with our military operations or to cause insubordination among our military forces. While we were neutral, Kammann's "mental attitude," as the trial court characterized the effect of this evidence, was no more an offense than was the "mental attitude" of other American citizens

who expressed their belief in the cause of the Allies. Of course no one can lawfully be convicted under the act of June 15, 1917, merely on account of his "mental attitude" (proven necessarily by his expressions) since that date. But if there was a prima facie case to go to the jury, it is apparent how damaging it would be to allow a close or doubtful case to be bolstered up with proof of expressions which are not fairly attributable to an intent or a willingness to interfere with our military operations or to cause insubordination among our military forces as proof of an intent to violate those commands of the espionage act when it should come to be enacted. That would virtually be giving an ex post facto effect to the statute itself. ·

We hold that the evidence of Kammann's expressions while we were neutral, though showing a siding with Germany as against the Allies, could not fairly be attributed to an intent or a willingness to interfere with our military operations or to cause insubordination among our military forces, and its admission was prejudicial error.

The judgment is reversed for further proceedings not inconsistent with this opinion.