### CARNEY v. UNITED STATES.

(Circuit Court of Appeals, Eighth Circuit. September 11, 1922.)

No. 5810.

**War** ⊗⇒4—Defendant, in prosecution for obstructing enlistment, held entitled to instruction embodying defense.

> Where accused was indicted for attempting, while the United States was at war with Germany and Austria-Hungary, to obstruct recruiting and to cause insubordination in the army, by publishing, one year after the Armistice and during demobilization, an article "Hands Off Soviet Russia," *held*, that he was entitled to an instruction, embodying the only defense he made, that the jury must consider accused's claim that his only purpose in publishing the article was to create public sentiment in opposition to an invasion of Russia, and that, in the light of the situation as it then existed, the article might be construed only as a protest in opposition to a movement, then believed imminent, to get the United States into active war with Russia, and, if so construed by the jury, accused was not guilty.

In Error to the District Court of the United States for the District of Minnesota; Page Morris, Judge.

Jack Carney was convicted of obstructing recruiting, and brings error. Reversed and remanded.

Homer Morris, of Minneapolis, Minn., for plaintiff in error.
Alfred Jaques, U. S. Atty., of Duluth, Minn.

Before LEWIS and KENYON, Circuit Judges, and JOHNSON, District Judge.

LEWIS, Circuit Judge. The plaintiff in error was sentenced to imprisonment for two years on verdicts of guilty on two counts of an indictment charging that on November 14, 1919, and while the United States was at war with Germany and Austria-Hungary, he (1) did will-

fully attempt to obstruct the recruiting and enlistment service of the United States, and (2) did willfully attempt to cause insubordination, disloyalty, and refusal of duty in the military forces of the United States. The manner and means by which the offenses were alleged to have been perpetrated were set out in the indictment, and consisted in the publication of an article entitled "Hands Off Soviet Russia," in a weekly newspaper published at Duluth. This was one year after the Armistice and during demobilization.

The published article was a protest against armed intervention by the United States in Russia. It represented that big commercial and financial interests here, as elsewhere, were against the Soviet government and in sympathy with the "Russian White Army," that American troops were then on Russian territory and American ammunition and money were being used for the purpose of strangling the only proletarian republic in the world, that Congress had not consented to what was being done, that it was being done by the President, and was a class war of American plutocracy and international money bags. In form it was addressed to "American Workers." It advised them to adopt the slogan: "Not a soldier for war against Soviet Russia, not a cent, not a rifle to help wage this war." It stated that the slogan had been adopted by British, French, and Italian workers, and that they were refusing to load ships with ammunition and provisions destined for the foes of Soviet Russia, and advised against enlisting for active service in Russia. The defendant, as a witness in his own behalf, testified that his intention in the publication was only to direct the attention of the American people to the Russian situation, that he had made a visit to Washington and New York just prior to its publication and was there convinced that an effort was being made to have the United States intervene with its military forces in the conflict then being waged between the Soviet army, known as the Red Army, and the armies of Kolchak and his followers, known as the White Army, and that the article was written and published for the sake of preventing that intervention. The United States did not declare war against Russia, and the record does not show, nor is it a matter of common knowledge, that a state of war then existed between the two countries. It does appear that the military forces of the United States were then guarding stores at Vladivostock and the Siberian railroad.

It must be conceded, we think, that the situation in Russia alone and our relation to that country would not have afforded a sufficient basis for the prosecution. The statute which defines the offenses has vitality and force only during a state of war. The pleader recognized this in drawing the indictment. It charges that at the time the article was published the United States was at war with Germany and Austria-Hungary. It is not claimed that there was war between the United States and Russia, and interference with recruiting and enlistment, and with the maintenance of subordination, loyalty and duty in the military forces of the United States could be lawfully punished under the statute only because the United States was then at war with Germany and Austria-Hungary, as charged in the indictment. A mere protest against a future declaration or state of war with another country is

not within the statute, but of course such protest may embody more, and by its excess bring the protestant within the terms of the statute here invoked. The published article might or might not be construed by a jury to have that effect. That was a question of fact for it to pass upon. The only defense was that there was no intention to do more than to protest against intervention, and that in the light of the situation at that time the article should be so construed. In Schenck v. U. S., 249 U. S. 47, 39 Sup. Ct. 247, 63 L. Ed. 470, a prosecution under this statute, it is said: "The character of every act depends upon the circumstances in which it is done." The court instructed the jury that the question for them to determine was, whether the defendant, in the publication and circulation of the article, was trying to produce the prohibited results and was doing so willfully; "that is, intentionally, with the conscious intention of producing that result." In other words, was it in the mind of the defendant "that it should obstruct the enlistment and recruiting service of the United States," etc., and for that purpose they were to consider, "first, the article itself and what its natural effect would be; next, whether, in the publication and circulation of that article this defendant was intentionally, with a conscious intent, publishing that article for the purpose of producing that result." The jury was told that at the time of the publication the United States was at war with the Imperial German Government. The court, however, did not advise the jury that the United States was not at war with Russia, and refused to give an instruction requested by counsel for plaintiff in error to the effect that the jury must consider the claim of the defendant that his only purpose in publishing the article was to create public sentiment in opposition to an invasion of Russia or to making active war in Russia; and that in the light of the situation as it then existed the article might be construed only as a protest in opposition to a movement, then believed imminent, to get the United States into active war with Russia, and if so construed by the jury the defendant was not guilty. The request embodied the only defense made, and we are of opinion that it presented a question of fact as to the meaning and effect of the published article under the existing circumstances; and that the refusal of the court to give it, in substance, was prejudicial to the rights of plaintiff in error.

Reversed and remanded.