THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* EMIL MAKVIRTA and Others, Appellants.

Second Department, November 9, 1928.

*Jacques Buitenkant,* for the appellants.

*George F. Palmer, Jr., Assistant District Attorney* [*Charles J. Dodd, District Attorney,* with him on the brief], for the respondent.

YOUNG, J. The statute involved is section 580 of the Penal Law, which, among other things, provides:

" If two or more persons conspire:   *   *   *
" 6. To commit any act injurious to the public health, to public morals, or to trade or commerce, or for the perversion or obstruction of justice, or of the due administration of the laws,
" Each of them is guilty of a misdemeanor."

It is conceded that one of the defendants distributed certain circulars or handbills, which it is claimed was in violation of the statute referred to. These circulars are quite lengthy, and one of them is set out on pages 4 to 10 of the case on appeal. Some of it is as follows:

" WORKING MEN AND WOMEN! You are facing the most crucial test of your lives. You are all on trial.
" Your right to the pursuit of life, liberty and happiness is becoming a tragic farce thru ' Government by injunction!'
" You are being robbed of the right to organize.
" Your unions are being wiped out.
" A devasting injunction epidemic is plaguing the working class thruout the country.
" A gigantic open-shop conspiracy is afoot.

" The coal barons of Pennsylvania and Ohio, the traction kings of New York, the coal magnates of Colorado and the rest of the big employers are out to destroy root and branch the labor organizations which you have built thru many years of painful struggle.

" Your enemies, the owners of industry, are out to smash the genuine trade unions and to put in their place, the fake bosses' unions, the counterfeit company unions.

" Your bosses, your exploiters, are hell-bent on crippling your fighting forces so as to force upon you degrading working conditions and starvation wages.

" Deadly blows are now being struck against every working man and working class family in the whole country by the capitalist dictatorship, the employing class tyranny, operating most brazenly as ' Government by injunction.'

## " MINERS' UNION IN DANGER.

" The miners' union, the backbone of the American trade union movement, is fighting for its life, the capitalists, the coal operators, their courts, their governors, and their Senators have placed the coal fields under a state of virtual military siege, actual martial law, in order to smash the United Mine Workers of America and then be able to destroy the other labor organizations.

" One hundred and seventy-five thousand scabs are now being protected by injunctions in the coal fields of Pennsylvania.

" At the same time, one hundred and fifty thousand union coal miners and their wives and children, all together totalling a population of nearly three-quarters of a million are now facing starvation, suffering acutest misery, being thrown out into the streets to freeze, and brutally clubbed by the State Cossacks and company thugs in and out of the State uniform.

## " THIS IS INJUNCTION DEMOCRACY WITH A CRUEL VENGEANCE!

" On top of all this privation, destitution, misery and hunger forced upon the heroic coal diggers of Pennsylvania and Ohio has come the VICIOUS INJUNCTION HANDED DOWN BY FEDERAL JUDGE SCHOONMAKER OF WESTERN PENNSYLVANIA. THIS IS THE HARDEST RESTRAINING ORDER IN THE HISTORY OF OUR LABOR MOVEMENT. The Schoonmaker injunction prevents the union from using money to prevent evictions of the miners. CZAR SCHOONMAKER HAS EVEN DECREED THAT NO SURETY COMPANY CAN PUT UP ANY BONDS TO PROTECT ANY OF THE UNION MINERS AND THEIR STARVED FAMILIES. Strike meetings are banned. Picketing is taboo.

"The Subway Slave System.

"In New York City the multi-millionaire subway owners are also running injunction-wild. THE SINISTER, SWEEPING INJUNCTION SECURED BY THE INTERBORO RAPID TRANSIT COMPANY not only gags and binds the New York traction workers into a slimy company union knot but also restrains EVERY MEMBER OF THE AMERICAN FEDERATION OF LABOR, nearly three million in number, FROM EVEN TALKING TO THESE WORKERS ABOUT THEIR JOINING A GENUINE TRADE UNION. * * *

"Fight the Injunction to a Finish.

"Workers, the injunction menace must be fought to a finish or it will finish all of us. We must break the injunction blockade against our right to organize, our right to strike, our right to picket and our right to the pursuit of life, liberty and happiness. If the enemies of the workers get away with their present injunction drive against the workers then every gain and every right it has taken us scores of years to win will be wiped out in quick time.

"Workingmen and women! The same capitalist courts and judges who murdered Sacco and Vanzetti, who are keeping Mooney and Billings in the California jails, are now handing down injunction orders to jail the miners of Colorado, to evict the miners of Ohio, to starve the miners of Pennsylvania, to terrorize and smash the union ranks of the New York traction workers. Already five striking miners have been killed and twenty wounded in Colorado by the State Rangers in Colorado.

"Workers! There is only one way in which to treat injunction courts and judges. That way is to show them outright contempt. EVERY INJUNCTION ISSUED MUST BE DISREGARDED AND VIOLATED IN MASS. EVERY INJUNCTION HANDED DOWN MUST BE DEFIED. EVERY INJUNCTION MUST BE BROKEN. NO SELF-RESPECTING WORKING MAN OR WOMAN SHOULD OR CAN OBEY ANY INJUNCTION ORDER. Let us speak to our ruling class the only language they understand. * * *

"Disregard, disobey, break every injunction. Tear every injunction edict to pieces. Treat every injunction as a scrap of paper."

Upon this appeal, it is contended by the appellants:

(1) That no conspiracy was shown to exist;

(2) That the defendants in circulating the leaflets in question acted lawfully;

(3) That no overt act was shown which effected the object of the conspiracy;

(4) That the evidence was not sufficient to uphold the conviction.

It was shown that three of the defendants were in an automobile which contained also the circulars in question, and that one of the defendants, Makvirta, was upon the street distributing the circulars, and that, when an officer approached him to inquire what he was doing, he immediately entered the automobile with the other three defendants and all four fled from the scene and were not captured until they had been pursued about fifteen blocks. This, it seems to me, is sufficient to show that the four were acting in concert and were engaged in the act complained of, that they all knew what they were doing and that they believed they were engaged in a wrongful act because of their flight.

The chief argument made in behalf of the defendants, however, is that what they were doing was lawful and not in violation of the section of the Penal Law referred to, and it is contended that, while the circular advocated a disregard of all injunctions and urged that all injunctions should be torn up and disobeyed, such action was not in violation of the law because it was not aimed at any injunction in existence at the time, and that, consequently, there could be no obstruction of justice; that it was not shown that the legal machinery. in any particular case was in motion, which the defendants conspired to obstruct; that it is not possible to obstruct something which does not exist. It is urged that there must be a certain and definite offense that is contemplated and that it was not shown that these circulars were delivered to any one who was subject to any injunctive order whatever, and the cases of *People* v. *Johnson* (117 Misc. 133) and *People* v. *Gitlow* (234 N. Y. 132, 151) are cited.

In the *Johnson* case the opinion was written by Judge TALLEY in the Court of General Sessions, where it was held that the circularization of pamphlets appealing to the public to stop the Ku Klux Klan propaganda in New York was not a violation of an ordinance of the city of New York forbidding distribution of handbills, because that ordinance was intended only to prevent distribution of certain commercial and business advertising matter.

The *Gitlow* case, as I read it, is against the contention of the appellants upon this appeal.

Very few cases are cited by counsel upon this appeal and most of them are not helpful. One case referred to, however, is *Schenck* v. *United States* (249 U. S. 47). In that case the defendants (plaintiffs in error) were convicted of a conspiracy to violate the Espionage Act, in that they circulated among men called for military service a pamphlet tending to influence them to obstruct the draft. Mr. Justice HOLMES wrote the opinion upon which the conviction was affirmed, and in the course of the opinion he said: " The question

in every case is whether the words used are used in such circumstances and are of such a nature as to create a clear and present danger that they will bring about the substantive evils that Congress has a right to prevent. It is a question of proximity and degree. When a nation is at war many things that might be said in time of peace are such a hindrance to its effort that their utterance will not be endured so long as men fight and that no court could regard them as protected by any constitutional right. It seems to be admitted that if an actual obstruction of the recruiting service were proved, liability for words that produced that effect might be enforced. The statute of 1917 in § 4 punishes conspiracies to obstruct as well as actual obstruction. If the act, (speaking, or circulating a paper,) its tendency and the intent with which it is done are the same, we perceive no ground for saying that success alone warrants making the act a crime."

In the *Gitlow* case the defendants were convicted of the crime of criminal anarchy (Penal Law, §§ 160, 161), and the judgment of conviction was upheld by the Court of Appeals by a divided court. The prevailing opinion, among other things, stated as follows: " Section 580 of the Penal Law provides that where two or more persons conspire to commit any act injurious to the public health, to public morals or to trade or commerce, or for the perversion or the obstruction of justice or of the due administration of the laws, each of them is guilty of a misdemeanor. To advocate, therefore, the commission of this conspiracy or action by mass strike whereby government is crippled, the administration of justice paralyzed, and the health, morals and welfare of a community endangered, and this for the purpose of bringing about a revolution in the State, is to advocate the overthrow of organized government by unlawful means."

Of course, the conviction in the *Gitlow* case was under a different section of the Penal Law, but it seems to me that what was said in regard to section 580 of the Penal Law, above cited, is applicable to the present case. Mr. Justice HOLMES, in the *Schenck* case, said that the statute relied upon in that case punishes conspiracies to obstruct as well as actual obstruction, and it seems to me that the opinion of Judge CRANE in the *Gitlow* case, above referred to, is in line with such construction of the statute. In my judgment, the acts of the defendants complained of were unlawful and in violation of section 580 of the Penal Law.

It is further contended that the conviction cannot be sustained because no overt act was shown which effected the object of the conspiracy.

Section 583 of the Penal Law provides that no agreement, with exceptions not here applicable, amounts to a conspiracy unless some act besides such agreement be done to effect the object thereof, and it is argued that the circulation of the handbills in question did not tend to obstruct or pervert the administration of the law. This really is the same argument made in the previous point. If the distribution of the circulars in question was unlawful, it follows that the act of circulation was the overt act required by the statute.

The defendants were properly convicted, and the judgment of conviction of the Court of Special Sessions, Borough of Brooklyn, should be affirmed.

Present — LAZANSKY, P. J., RICH, YOUNG, SEEGER and SCUDDER, JJ.

Judgment of conviction of the Court of Special Sessions, Borough of Brooklyn, unanimously affirmed.