**UNITED STATES of America, et al., Plaintiffs,**

v.

**Maxim RICE, Respondent.**

**UNITED STATES of America, et al., Plaintiffs,**

v.

**Donald F. MOSLEY, Respondent.**

Civ. Nos. 87–79–ATH(DF), 88–22–ATH(DF).

United States District Court, M.D. Georgia, Athens Division.

Jan. 18, 1989.

John L. Lunch, Asst. U.S. Atty., Macon, Ga., for plaintiffs.

Donald F. Mosley with the aid of Milner S. Ball Law School, University of Georgia, Athens, Ga., for respondents.

**FITZPATRICK, District Judge.**

The above-referenced actions are before this court on the Government's request that the Respondents, Maxim Rice and Donald F. Mosley, be held in contempt for failing to obey certain Orders of Enforcement previously issued by this court. The court held a hearing on the contempt proceedings on January 4, 1989. After listening to the arguments of the parties at the hearing, the court found the Respondents to be in contempt of court for failing to comply with the Orders of Enforcement. This written Order memorializes the court's findings and sets forth the sanctions to be levied against Respondents Rice and Mosley.

## I. BACKGROUND

Respondents reside with their families at the Jubilee Partners community near Athens, Georgia. The purpose of the Jubilee Partners organization is to resettle war victims and refugees from other countries, especially those from Central America. Apparently, those residing at the Jubilee Partners community live a very simple lifestyle, and many, if not all, fall below the taxable level of income.

The record indicates that Respondent Rice joined the Jubilee Partners at some point in 1985. In a letter to the court, Respondent Rice indicated that his total income since becoming a Jubilee Partner consists of room and board, and five dollars per week for each family member. Although Respondent Rice may have fallen below the taxable income level for the years 1985 and 1986, he refused to file tax returns for those two years. In addition, he refused to file a tax return for 1984, the year before he came to the Jubilee Partners community.

Respondent Mosley is a cofounder of Jubilee Partners. According to certain pleadings in the record, Respondent Mosley now lives below the taxable level of income. In 1977, however, Respondent Mosley's parents died, and he became a beneficiary of a trust fund established by his father. From 1978 through 1981, Respondent Mosley filed tax returns "and paid most of the federal taxes indicated on them." Affidavit of Donald F. Mosley, p. 6 (indexed as docket entry number 3 in the record on file with the court). Respondent Mosley, however, withheld a portion of his taxes during those years, such portion representing the amount he believed to be equivalent to the percentage of the federal budget that went for military purposes. Beginning in 1982, Respondent Mosley stopped filing his tax returns or paying his federal income taxes. Respondent Mosley did file returns for the years 1985 and 1986, since he fell below the taxable level of income for those years, and therefore, owed no taxes.

In an effort to determine the tax liability of Respondent Rice for the years 1984, 1985, and 1986, as well as the tax liability of Respondent Mosley for the years 1982, 1983, and 1984, the Internal Revenue Service (IRS) issued an administrative summons to each Respondent directing them to produce any books, papers, records, or other data that would show each Respondent's taxable income for the years in question. The Respondents refused to produce the requested information on the grounds that to do so would be a violation of their religious beliefs. Specifically, the Respondents object to paying federal income taxes, and to aiding the IRS in its attempt to determine what taxes are owed, since a portion of their tax dollars will be used to

support the nation's defense. Respondents Rice and Mosley firmly believe that by voluntarily complying with the IRS summonses, they would be forced to indirectly support the expenditure of funds for military purposes. Consequently, Respondents refused to produce the requested information, since they conscientiously oppose war in any form, and particularly what they believe to be the intervention of the United States in the private affairs of another country.

On October 5, 1987, the IRS petitioned this court to enforce the summons issued to Respondent Rice. On November 16, 1987, the court held a hearing on the Government's petition for enforcement and ordered Respondent Rice to comply with the IRS summons. On March 1, 1988, the IRS petitioned this court to enforce the summons issued to Respondent Mosley. On June 1, 1988, the court held a hearing on the Government's petition and ordered Respondent Mosley to comply with the IRS summons issued to him.

Respondent Rice appealed this court's Order of Enforcement to the Eleventh Circuit Court of Appeals. This court stayed enforcement of the November 16th Order during the appeal process. On September 22, 1988, the Eleventh Circuit affirmed this court's November 16th Order of Enforcement.

Following the decision of the Eleventh Circuit, Respondents Rice and Mosley continued in their refusal to supply the necessary documents to the IRS. Consequently, on December 5, 1988, the IRS initiated civil contempt proceedings against the Respondents. At the contempt hearing, the Respondents again stated that because of their religious beliefs, they would not comply with the court's Orders of Enforcement.

## II. DISCUSSION

The government brings these civil contempt proceedings pursuant to 18 U.S.C. § 401. Section 401 provides in pertinent part:

A court of the United States shall have power to punish by fine or imprisonment, at its discretion, such contempt of its authority, [including]

\* \* \* \* \* \*

(3) Disobedience or resistance to its lawful writ, process, order, rule, decree, or command.

18 U.S.C. § 401 (1966). The Government asks that Respondents Rice and Mosley be held in contempt until they comply with the Orders of Enforcement issued by this court on November 16, 1987, and June 1, 1988.

The burden of proof in civil contempt proceedings is set forth in *United States v. Hayes*, 722 F.2d 723 (11th Cir.1984). Under the standard set forth in *Hayes*, the Government has the initial burden to prove by clear and convincing evidence that the Respondents have violated a court Order. *Id.* at 725. Once the Government has made a prima facie showing that a violation has occurred, the Respondents can defend on the grounds that they were unable to comply with the court's Order. *Id.* To be successful on this defense, however, the Respondents must produce some evidence to show that they have made "all reasonable efforts to comply" with the Order. *Id.*

At the January 4th hearing, the revenue officers handling the cases of Respondents Rice and Mosley testified that neither Respondent had complied with the Orders of Enforcement previously issued by this court. The Respondents did not contest the testimony of the revenue officers. Accordingly, the Government satisfied its burden of showing by clear and convincing evidence that Respondents Rice and Mosley had violated certain Orders of this court.

■ Moreover, neither Respondent attempted to defend on the grounds that they were legally unable to comply with the Orders of Enforcement. Both Respondents are in possession of the documentation being requested by the IRS, and both Respondents could deliver the documentation to the IRS if they chose to do so. Indeed, a religious or moral belief that prohibits a person from producing documents that he is under a lawful court order to produce is not the type of "inability to comply" contemplated by *Hayes*.

After listening to the testimony of the parties at the hearing and considering the relevant authority in this area, the court finds that Respondents Maxim Rice and Donald F. Mosley are in wilful violation of the Orders of Enforcement in which this court directed both Respondents to submit certain financial records to the IRS. To allow the Respondents to flout the law with impunity simply because they disagree with the law or with an underlying policy of their Government, would strike at the delicate balance that exists between protecting the rights of society as a whole on one hand, and protecting the rights of individuals under the Bill of Rights on the other. The appellate courts have ruled firmly and consistently that the Respondents' legal position is without merit. Allowing Respondents Rice and Mosley to escape compliance with the law merely because they believe their position is "morally right" would require the court to give a similar choice concerning compliance with the law to other individuals who have beliefs that they feel are morally justifiable, but that are not in accord with the parameters of the law as established in our society.

This country has a long history of religious toleration. Indeed, the freedom to practice our religion is protected by the first of the Bill of Rights to our Constitution. If this court were to allow the Respondents to disregard a law of the United States because it offends their conscience and thus, requires them to act in a manner inconsistent with their views of moral and ethical behavior, then this court, in order to honor its obligation to treat *all* litigants with fairness, would be forced to give every individual or group the same right to pick and choose among the laws of this country that it wishes to obey. To use an extreme example, (and it is assumed this example may be offensive to the Respondents), if members of Jubilee Partners can wilfully withhold information from the IRS because of their religious and moral beliefs, then this court would be forced to allow the same right to members of other groups who also stand behind their religious beliefs, such as the Aryan Nation or the Ku Klux Klan. Could not individuals who disapprove of farm subsidies, food stamps, or foreign aid withhold their taxes under the same rationale?

Although these examples may be extreme, the court believes the point has been made: to follow Respondents' logic would be one step back toward anarchy. In a society of different cultures, religions, and interests, each group and individual must sacrifice some of his or her perceived "rights" in order to provide the funds necessary to establish and maintain a stable society that can and will enforce the essence of the Bill of Rights to our Constitution, a document unique in the world in its protection of basic liberties. Nothing in the Bill of Rights is absolute. As Justice Holmes so aptly stated, "The most stringent protection of free speech would not protect a man in falsely shouting fire in a theatre, and causing a panic." *Schenck v. United States*, 249 U.S. 47, 52, 39 S.Ct. 247, 249, 63 L.Ed. 470 (1919).

Each of the enumerated rights in the first ten amendments must be interpreted in a reasonable manner. In our system this interpretation is vested in our federal courts. As previously stated, our appellate courts have said the Respondents' position is without merit.

At one time, in colloquy between the court and at least one of these Respondents, the court observed that the Respondent had embarked on a course of action (or inaction) that was to some extent reminiscent of the path followed by martyrs of early Christianity. Thomas A' Becket, Sir Thomas More, Joan of Arc, and countless others whose names are lost in the mists of time, paid the supreme sacrifice for matters of conscience—they were martyrs in the true sense of the word. The court hastens to add that it recognizes that the penalty which the Respondents must pay in the instant cases is certainly far less onerous than that which the individuals named above paid. Nevertheless, the Respondents must realize that their conduct can have only one eventual result. A price must be paid for their position which has no protection under existing law. If pro-

viding the required information would be such an intolerable act for the Respondents that they must refuse, then so be it. For all their constitutional rights, they are still members of a society that offers them protection even while they challenge the law in one particular area.

The Respondents and their families enjoy their religious freedom by living at the Jubilee Partners community without interference from those who may disapprove of their activities on political or social grounds. In fact, this freedom is protected not only by local authorities, but by federal law enforcement officials as well. The obligation to pay taxes and to furnish the financial information necessary to allow the IRS to compute their taxes is a small price to pay in return for the protection the Respondents and their families receive from this Government.

Before stating the appropriate sanctions in these two cases, the court will once again note that both of these men appear to be sincere in their beliefs and positions. Moreover, in all other respects, these men appear to be upstanding members of their community. Although their political views could be termed controversial by some, these views have obviously played no part whatsoever in the decision of this court.

As noted by the Eleventh Circuit in *Hayes*, "the obedience of judicial orders is of paramount importance," and courts should not "lightly excuse a failure to comply." *Hayes*, 722 F.2d at 726. According-ly, it is hereby ORDERED AND ADJUDGED:

(1) that Respondents Maxim Rice and Donald F. Mosley are held to be in civil contempt of this court for failing to comply with its Orders of Enforcement entered on November 16, 1987, and June 1, 1988;

(2) that Respondents Maxim Rice and Donald F. Mosley be remanded to the custody of the United States Marshals and incarcerated for a period of 60 days;[1]

(3) that Respondents Maxim Rice and Donald F. Mosley shall have the ability to purge themselves of the contempt, and thereby end their period of incarceration, by complying with the Orders of Enforcement and supplying the IRS with the financial information requested;[2] and

(4) that this court shall retain jurisdiction of this matter to determine whether additional sanctions for the contempt will be necessary.

SO ORDERED.

---

**1.** In *United States ex rel. Thom v. Jenkins*, 760 F.2d 736 (7th Cir.1985), the Seventh Circuit commented on the length of a period of incarceration in a civil contempt case. The court noted that

although incarceration for civil contempt may continue indefinitely, it cannot last forever. If after many months, or perhaps even several years, the district judge becomes convinced that, although [the respondent] is able to pay he will steadfastly refuse to yield to the coercion of incarceration, the judge would be obligated to release [the respondent] since incarceration would no longer serve the purpose of the civil contempt order—coercing payment.

*Id.* at 740 (citations omitted). Because of the circumstances involved in the instant cases, the court finds it unnecessary to incarcerate Respondents Rice and Mosley for a lengthy period of time.

**2.** Incarceration in a civil contempt proceeding is intended to force a party into doing what he has previously been ordered to do. Thus, the party can secure his discharge by so acting. *See* 11 C. Wright & A. Miller, *Federal Practice and Procedure*, § 2960, p. 585 (1973). Accordingly, when incarceration is ordered in a civil contempt proceeding, the party in contempt carries "the keys of [his] prison in [his] own pocket." *See In re Nevitt*, 117 F. 448, 461 (8th Cir.1902).

The defendants have admitted in open court that the imposition of a fine would not influence their decision to continue their defense.