OPINION
Defendant-appellant Rubin J. Szerlip appeals the February 21, 2001 Judgment Entry of the Mount Vernon Municipal Court which found him guilty of menacing by stalking and sentenced him accordingly. Plaintiff-appellee is the State of Ohio.
 STATEMENT OF THE FACTS AND CASE
In late winter, 1999, appellant authored and distributed an undetermined number of copies of newsletters entitled "The Gospel Truth." In these newsletters, appellant named several individuals, claiming to expose their various behaviors to the public. One of the individuals mentioned by name in an edition of the newsletter was appellant's ex-wife, Carol Szerlip.
Appellant distributed or caused to be distributed copies of the newsletters at various shopping areas and eating establishments including Wal-Mart, Burger King and the Mount Vernon High School where Ms. Szerlip was employed.
On March 3, 1999, appellant was charged with one count of menacing by stalking in violation of R.C. 2903.211(A). The affidavit charging the violation was signed by appellant's ex-wife, Carol Jessup-Szerlip. At his March 5, 1999 arraignment, appellant plead not guilty to the charge. On March 23, 1999, appellant filed his notice of his waiver of time and his demand for a jury trial. The trial court scheduled a jury trial for May 20, 1999.
On May 19, 1999, appellant filed his motion for continuance of the jury trial. The trial court granted the motion in a May 21, 1999 Judgment Entry, continuing the trial until July 22, 1999.
On July 13, 1999, appellee requested a continuance. Although there is no judgment entry, the trial court apparently granted the motion and rescheduled the trial for August 26, 1999. However, on July 23, 1999, appellant's attorney, David Homer, filed his motion to withdraw. Thereafter, on August 16, 1999, appellant filed another motion for a continuance. The trial court granted said motion and rescheduled the jury trial for November 3, 1999.
On October 25, 1999, the trial judge, Patricia Warren Maiorino, recused herself from the case because she appeared on appellant's witness list for trial. In the same entry, the trial court continued the November 3, 1999 trial date, to await appointment of a visiting judge. The trial court continued the case until February 16, 2000.
In a February 16, 2000 Filing, Attorney David Homer entered a new appearance for appellant and filed a motion to continue the trial again. The motion was granted and a jury trial was rescheduled for June 1, 2000. On May 31, 2000, Attorney David Homer withdrew from the case for a second time. In a June 1, 2000 Judgment Entry, the trial court scheduled the jury trial for August 30, 2000. On June 19, 2000, Attorney William Bringman filed his entry of appearance on behalf of appellant. Attorney Bringman confirmed he was available for the then-scheduled trial date, and the trial court ordered the matter to proceed to trial on August 30, 2000.
On July 18, 2000, the trial court filed its proposed jury instructions for the case. On the same date, appellant filed a motion to dismiss on the grounds of selective prosecution. The trial court set a hearing on the motion for July 31, 2000. On July 31, 2000, appellant filed his exception to the proposed jury instructions.
On August 4, 2000, appellant filed a second motion to dismiss on the grounds of double jeopardy. The trial court set a hearing for both motions to dismiss. On August 30, 2000, appellant filed a "Withdrawl of Waiver of Time," purporting to withdraw his waiver of time within which the case must have been commenced. In an October 2, 2000 Judgment Entry, the trial court denied both of appellant's motions to dismiss.
On October 11, 2000, appellant moved for a continuance. In an October 13, 2000 Judgment Entry, the trial court granted the continuance and ordered the trial to commence November 9, 2000.
On October 18, 2000, appellee filed a request for a jury instruction on the definition of mental distress. The State asked the jury be instructed mental distress means
 * * * extreme mental pain. A highly unpleasant mental reaction includes anguish, grieve, fright, shame, anger, chagrin, disappointment, worry, nausea, humiliation, or fury that results from another persons conduct; emotional pain and suffering.
Appellee took this definition from Black's Law Dictionary.
On November 3, 2000, appellant moved for yet another continuance. This motion was granted by the trial court and the trial was continued to January 31, 2001.
On January 12, 2001, appellant filed a motion to dismiss for violation of his speedy trial rights. On January 16, 2001, appellant moved for another continuance. In this motion, appellant's trial counsel noted he had a conflict with the morning of the second day of trial as assigned. In a January 12, 2001 Judgment Entry, the trial court denied appellant's motion to dismiss on the basis of speedy trial. In a January 16, 2001 Judgment Entry, the trial court denied appellant's motion for a continuance, but stated it would extend the work day on January 31, 2001, until such time as the case could be concluded so appellant's counsel could conduct the entire trial.
On January 23, 2001, appellant's attorney filed his motion for leave to withdraw. The motion stated appellant had discharged Mr. Bringman as his attorney and therefore, Mr. Bringman had no authority to participate in the trial. This motion was "signed and approved" by appellant. In a January 24, 2001 Notice and Motion, appellant asked the trial court to re-set the trial for January 31, 2001 and February 1, 2001. On January 24, 2001, appellant filed a motion requesting the trial court to recuse himself and permit another judge be appointed in his place.
On January 24, 2001, appellant filed his praecipe for subpoena for trial. This praecipe included the names of several judges.
In a January 25, 2001 Judgment Entry, the trial court granted Mr. Bringman's motion to withdraw as counsel, and denied appellant's motion for recusal. The trial court further inquired of appellant why Judge Otho Eyster of the Knox County Court of Common Pleas had been subpoenaed as a witness. After hearing appellant's explanation, the trial court on its own motion, quashed the subpoena for Judge Eyster. Further, the trial court also quashed subpoenas for the prosecuting attorney, William Smith, and for himself, finding such had been filed for the sole purpose of delay.
The matter proceeded to trial on January 31, 2001. On February 1, 2001, the jury found appellant guilty of one count of menacing by stalking. In a February 21, 2001 Judgment Entry, the trial court found appellant guilty of one count of menacing by stalking and sentenced appellant to 180 days in jail with 135 days of the jail time suspended with conditions.
It is from this judgment entry appellant prosecutes this appeal, assigning the following as error:
 IRREGULARITY IN THE PROCEEDINGS. THE TRIAL COURT ERRED IN PROFFERING THE TESTIMONY OF DEFENDANT'S EXPERT WITNESS, DENNIS MARIKIS, PH.D. (PARTIAL TRANSCRIPT, PAGE 1)
 IRREGULARITY IN THE PROCEEDINGS. THE TRIAL COURT ERRED WHEN IT CHANGED THE STATUTES OF THE CHARGING VIOLATION.
 IRREGULARITY IN THE PROCEEDINGS. THE TRIAL COURT ERRED WHEN IT QUASHED THE SUBPOENAS OF JUDGE OTHO EYSTER AND PROSECUTOR WILLIAM SMITH. (JANUARY 25, '2001 JOURNAL ENTRY)
 IRREGULARITY IN THE PROCEEDINGS. THE TRIAL COURT ERRED WHEN IT PROHIBITED DEFENDANT FROM MENTIONING THE NAMES OF JUDGE OTHO EYSTER, JUDGE PAUL SPURGEON AND CITY PROSECUTOR WILLIAM SMITH DURING THE TRIAL OR FROM OFFERING EXHIBITS IN HIS DEFENSE THAT MENTIONED THESE NAMES. (TRANSCRIPT, PRE-TRIAL HEARING HELD JANUARY 31, 2001 AT 8:00 A.M.)
 ACTS OF SURPRISE. DEFENDANT WAS NOT GIVEN COPY OF EITHER JURY INSTRUCTIONS THAT WERE CHANGED DURING THE COURSE OF THE, TRIAL BEFORE WITNESSES WERE EXAMINED OR THEY WERE READ TO THE JURY.
 VERDICT NOT SUSTAINED BY SUFFICIENT EVIDENCE. THE TRIAL COURT DID NOT DISMISS CASE, PURSUANT TO STATUTE AND STATE VS. SCRUGGS, WHERE CHARGING DOCUMENT MUST HAVE TWO DATES THEREBY COMPLYING WITH THE STATUTE REQUIREMENTS OF "TWO OR MORE INCIDENTS". (SECTION 2903.2 1, OHIO REVISED CODE)
 VERDICT NOT SUSTAINED BY SUFFICIENT EVIDENCE. ALLEGED VICTIM TESTIFIED THE NEWSLETTER THAT WAS DISTRIBUTED ON FEBRUARY 24, 1999 DID NOT DAMAGE HER, THE ONLY DATE LISTED ON THE CHARGING COMPLAINT AND BILL OF PARTICULARS.
 THE TRIAL COURT ABUSED ITS DISCRETION BY NOT ALLOWING A CONTINUANCE WHEN THE ATTORNEY OF RECORD, WILLIAM BRINGMAN, HAD A CONFLICT WITH THE SECOND DAY OF TRIAL, FEBRUARY 1, 200 1. (JOURNAL ENTRY FILED JANUARY 16, 200 1)
 THE TRIAL COURT ABUSED ITS DISCRETION BY NOT ALLOWING AN ASSISTANT FOR THE DEFENDANT, PURSUANT TO RULES OF EVIDENCE 615(3)
 THE TRIAL COURT ERRED WHEN IT WOULD NOT ALLOW DEFENDANT TO IMPEACH WITNESSES PURSUANT TO RULES OF EVIDENCE 607-609, SPECIFICALLY COMPLAINANT CAROL JESSUP SZERLIP.
 THE TRIAL COURT ERRED WHEN IT DID NOT DISMISS THE CASE FOR RUNNING PAST ITS TIME.
 THE TRIAL COURT ACTED CONTRARY TO LAW WHEN IT DENIED DEFENDANT HIS RIGHT TO OFFER EXTRINSIC EVIDENCE TO SHOW BIAS OR IMPROPER MOTIVE OF BOTH THE COMPLAINANT AND THE PROSECUTOR, UNDER EVIDENCE RULE 616.
 THE TRIAL COURT ACTED CONTRARY TO LAW WHEN IT DID NOT DISMISS THE CASE WHEN PROSECUTOR ADMITTED TO SELECTIVELY PROSECUTING DEFENDANT. (TRANSCRIPT SELECTIVE PROSECUTION HEARINGS)
 THE TRIAL COURT ACTED CONTRARY TO LAW WHEN IT DID NOT DISMISS THE CASE BECAUSE THE FIRST AMENDMENT PROTECTED APPELLANT'S SPEECH.
 THE TRIAL COURT ABUSED ITS DISCRETION IN FAILING TO ORDER A NEW TRIAL.
 I
In appellant's first assignment of error, he maintains the trial court erred in "proffering" testimony of his expert witness, Dennis Marikis, Ph.D.
We note at the outset, appellant's argument fails to cite any portion of the transcript at which the error occurs, and therefore is not in compliance with App. R. 16. However, notwithstanding this fact, we have reviewed the transcript and find appellant may be arguing the trial court refused to permit appellant to recall his expert witness after correcting the definition of mental distress. The trial court read to the jury the new definition of mental distress as follows:
 Mental distress means any mental illness or condition that involves some temporary substantial incapacity or mental illness or condition that would normally require psychiatric treatment.
Although it is not set forth in either brief, apparently, the trial court had been operating under a definition for mental distress provided by appellee in its proposed jury instructions. The trial court realized, however, R.C. 2903.211(D)(2) contains the definition for mental distress to be used in a prosecution for menacing by stalking under the statute. Unfortunately, the trial court did not realize the problem until after appellant had presented the testimony of his expert witness, Dr. Marikis.
Accordingly, the trial court read the jury the definition of mental distress contained in the statute. Further, and over appellant's objection, the trial court instructed the jury appellant's expert would have found the victim was not suffering mental distress as mental distress was defined under the statute. Not only do we find no error in the trial court's instruction, we find no prejudice to appellant.
Accordingly, appellant's first assignment of error is overruled.
 II
In his second assignment of error, appellant maintains "irregularity in the proceedings." Although it is not clear, appellant appears to maintain the trial court erred in changing and redefining the definition for mental distress as stated above. Appellant appears to take issue not only with the original definition of mental distress, which was the definition proposed by appellee in its proposed jury instruction before trial, appellant also appears to take issue with the trial court's new definition for mental distress. As noted above, the definition given to the jury in the jury instruction and as set forth above, was the definition provided in the menacing by stalking statute. Accordingly, we find no prejudice to appellant and no error by the trial court.
Appellant's second assignment of error is overruled.
 III
In appellant's third assignment of error, he maintains the trial court erred in quashing the subpoenas of Judge Eyster and Prosecutor William Smith in the January 25, 2001 Judgment Entry. As noted in the Statement of The Case And Facts, supra, appellant had subpoenaed for his trial Judge Spurgeon, the trial court judge, Judge Eyster, and Prosecutor William Smith, the prosecutor assigned to appellant's case. The Judgment Entry states appellant was unable to provide a reasonable explanation why the testimony of these witnesses was required. Accordingly, the trial court quashed the subpoenas on its own motion.
Appellant did not request findings of fact or conclusions of law with regard to this judgment entry. We find the judgment entry to be valid on its face. Further, we find no abuse of discretion in the trial court's decision to quash the above referenced subpoenas.
Appellant's third assignment of error is overruled.
 IV
In his fourth assignment of error, appellant maintains the trial court erred in prohibiting him from mentioning the names of Judge Eyster, Judge Spurgeon, and prosecutor William Smith during the trial. Although where the alleged error occurred is not specifically identified in appellant's argument, appellant maintains this error occurred at the January 31, 2001 pretrial hearing. Appellant has pointed to no portion of the transcript provided on appeal to reference the error. For the same reasons set forth in our analysis of appellant's third assignment of error, we find no abuse of discretion in the trial court's decision.
Appellant's fourth assignment of error is overruled.
 V
In appellant's fifth assignment of error, appellant claims he was not permitted to use the "new" jury instruction on the definition of mental distress until after he had already questioned his witness. As noted in the Statement of the Facts and Case, supra, appellant received a copy of appellee's proposed jury instructions well in advance of trial. For the same reasons set forth in our analysis of appellant's second assignment of error, appellant's fifth assignment of error is overruled.
 VI
In appellant's sixth assignment of error, he maintains the verdict was not supported by sufficient evidence because the trial court erred in failing to dismiss his case, "pursuant to State v. Scruggs." Appellant does not provide this Court with the citation for the case or the proposition of law upon which he bases this assignment of error. Appellant's assignment of error appears to maintain the State was required to charge him with two separate incidents in order to prove menacing by stalking. Appellant argues the State based its argument only the distribution of the first edition of his newsletter "The Gospel Truth" and then argued several copies of that one newsletter caused mental distress.
While we find this to be an inaccurate characterization of the evidence presented at trial, we now address the requirements for a conviction under R.C. 2903.211.
Menacing by stalking is governed by R.C. 2903.211. The statute provides, in relevant part:
 (A) No person by engaging in a pattern of conduct shall knowingly cause another to believe that the offender will cause physical harm to the other person or cause mental distress to the other person.
 (B) Whoever violates this section is guilty of menacing by stalking.
* * *
(D) As used in this section:
 (1) "Pattern of conduct" means two or more actions or incidents closely related in time, whether or not there has been a prior conviction based on any of those actions or incidents. Actions or incidents that prevent, obstruct, or delay the performance by a public official, firefighter, rescuer, or emergency medical services person of any authorized act within the public official's, firefighter's, rescuer's, or emergency medical services person's official capacity may constitute a "pattern of conduct."
 (2) "Mental distress" means any mental illness or condition that involves some temporary substantial incapacity or mental illness or condition that would normally require psychiatric treatment.
* * *
At trial, Carol Szerlip, appellant's ex-wife, testified in addition to the flyer distributed on February 12, appellant had published more than one newsletter and threatened her with similar acts since 1995, including threatening to play tape recordings over the Mansfield Christian School loudspeaker system. We find this sufficient evidence to demonstrate a pattern of conduct as required by the statute.
Appellant's sixth assignment of error is overruled.
 VII
In appellant's seventh assignment of error, he maintains the verdict was unsupported by sufficient evidence where the victim testified the newsletter did not damage her. Appellant points to no record evidence to demonstrate this error or lack of sufficiency of the evidence.
We reviewed the record and we find the testimony of Mrs. Szerlip was sufficient, if believed, to demonstrate mental distress.
Accordingly, appellant's seventh assignment of error is overruled.
 VIII
In his eighth assignment of error, appellant maintains the trial court abused its discretion in failing to permit a continuance of the trial due to his Attorney Bringman's conflict with the second day of trial. We disagree.
As noted in the Statement of the Case and Facts, supra, the trial court attempted to accommodate appellant's attorney by extending the court hours to conduct the trial all on January 31, 2001. In its January 25, 2001 Judgment Entry, the trial court noted it asked appellant if he wanted to proceed to trial with or without counsel. After consulting with Mr. Bringman, appellant elected to proceed at trial as scheduled without counsel. Accordingly, the trial court granted Attorney Bringman's request to be excused with the consent of appellant.
Even if there had been error, which we do not find, appellant would have waived any such error on appeal.
Appellant's eighth assignment of error is overruled.
 XIV
In his ninth assignment of error, appellant maintains the trial court abused its discretion by failing to appoint an assistant for appellant pursuant to Evid.R. 615(3).
At the outset, we note Evid. R. 615 deals with the exclusion of witnesses and contains no provision for the appointment of an assistant. Further, this rule of evidence does not contain a paragraph three. Even if appellant could have identified law requiring the trial court to appoint an assistant, appellant has failed to point to the place in the record where the trial court denied him an "assistant."
Appellant's ninth assignment of error is overruled.
 X
In his tenth assignment of error, appellant maintains the trial court erred in failing to permit him to impeach Carol Szerlip pursuant to Evid. R. 607-609. Appellant maintains he was prevented from impeaching this witnesses based upon prior inconsistent statements. Again, appellant fails to indicate a record demonstration of any such error. Our review of the testimony of Ms. Szerlip does not demonstrate error.
Appellant's tenth assignment of error is overruled.
 XI
As noted in the Statement of the Case and Facts, supra, on March 23, 1999, appellant filed a waiver of time within which the matter had to be brought to trial. Thereafter, the trial was set for May 20, 1999; July 22, 1999; August 26, 1999; November 3, 1999; June 1, 2000; August 30, 2000; October 18, 2000; November 9, 2000; and January 31, 2001. Appellant was responsible for all but one of the continuances. In light of this fact, we find appellant has waived this argument on appeal.
Appellant's eleventh assignment of error is overruled.
 XII
In his twelfth assignment of error, appellant maintains the trial court erred in failing to permit him to offer extrinsic evidence to show bias or improper motive on the part of the complaining witness, and the prosecutor. Appellant does not reference where in the record such error occurred. Accordingly, we are unable to review any potential error.
Accordingly, appellant's twelfth assignment of error is overruled.
 XIII
In appellant's thirteenth assignment of error, he maintains the trial court erred in failing to dismiss the case due to selective prosecution. Again, appellant fails to point to any record demonstration of this error. In fact, appellant references "selective prosecution hearings transcripts" which were not made part of the record before this Court.
Accordingly, appellant's thirteenth assignment of error is overruled.
 XIV
In appellant's fourteenth assignment of error, he maintains the trial court erred in failing to dismiss the case on First Amendment grounds.
Although our "right to receive information and ideas, regardless of their social worth * * * is fundamental to our free society,"[1], not all speech is protected.[2] For example, the "clear and present danger" doctrine renders unprotected, advocacy which incites to violence or illegal conduct holding as unprotected speech "`fighting' words," "which by their very utterance inflict injury or tend to incite an immediate breach of the peace.[3]" We also note libel is not in the area of constitutionally protected speech.[4]
Appellant's constitutional right to freedom of speech is not at issue in the matter sub judice. Rather, a jury was asked to determine whether appellant's pattern of conduct knowingly caused mental distress as defined under the statute. Apellant has made no claim the statute is unconstitutional. We find appellant's behavior, as charged, was not protected by the First Amendment.
Accordingly, appellant's fourteenth assignment of error is overruled.
 XV
In appellant's fifteenth assignment of error, he maintains the trial court erred in failing to grant a new trial. Because this assignment of error fails to explain how the trial court erred but rather merely concludes the trial court erred, it is overruled.
The February 21, 2001 Judgment Entry of the Mount Vernon Municipal Court is affirmed.
By: Hoffman, P.J., Gwin, J. and Edwards, J. concur
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, The February 21, 2001 Judgment Entry of the Mount Vernon Municipal Court is affirmed. Costs assessed to appellant.
[1] Stanley v. Georgia (1969), 394 U.S. 557, 89 S.Ct. 1243,22 L.Ed.2d 542, 564, 89 S.Ct. at 1247; Winters v. New York (1948), 333 U.S. 507,510, 68 S.Ct. 665, 667, 92 L.Ed. 840.
[2] See, e.g., Schenck v. United States (1919), 249 U.S. 47,39 S.Ct. 247, 63 L.Ed. 470.
[3] Chaplinsky v. New Hampshire (1942), 315 U.S. 568, 572,62 S.Ct. 766, 769, 86 L.Ed. 1031.
[4] Beauharnais v. Illinois (1952), 343 U.S. 250, 266, 72 S.Ct. 725,735, 96 L.Ed. 919.